**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Action No. 19-cr-518-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **TSHINBANDA KAZADI,**

    Defendant.

---

## ORDER DENYING MOTION TO SUPPRESS

---

The Government charges Tshinbanda Kazadi ("Defendant" or "Kazadi") with one count of 18 U.S.C. § 924(c)(1)(A)(i) (possession of a firearm in furtherance of drug trafficking crime); two counts of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c) (possession with intent to distribute a mixture or substance containing a detectable amount of cocaine and methamphetamine); and one count of 18 U.S.C. § 922(g)(1) (possession of a firearm and ammunition by a prohibited person). (ECF No. 1.)

Kazadi moves to suppress "all evidence obtained from the traffic stop on November 1, 2019 as well as any statements allegedly made while he was detained during the traffic stop on the basis that reasonable suspicion did not exist to believe he was armed and dangerous to warrant a pat-down search by law enforcement." ("Motion"; ECF No. 26 at 1.) The Government filed its response on May 8, 2020 ("Response"; ECF No. 36), and Kazadi filed his reply on June 10, 2020 ("Reply"; ECF No. 52).

The Court has determined that no evidentiary hearing is necessary. For the reasons explained below, the Court denies the Motion.

## I. Factual Findings

From the undisputed facts in the parties' briefs and Officer Zimmerman's body camera footage, which was submitted by the Government as Exhibit 1 to its Response ("Video"; ECF No. 36-1), the Court finds as follows for purposes of this Motion.

On the night of November 1, 2019, Officers Zimmerman and Spano of the Aurora Police Department, along with two Special Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives, were conducting surveillance of the area of 23rd Street and Emporia Street in Aurora, Colorado from an unmarked police vehicle. (ECF No. 26 at 1; ECF No. 36 at 1–2.)

While conducting visual surveillance of the area, the officers observed a 2018 Ford Focus parked around 23rd Street and Emporia Street, which was occupied by a female later identified as Ms. Asbriel Brooks. (ECF No. 26 at 1–2; ECF No. 36 at 2.) The officers observed a male wearing a light-colored sweat suit, later identified as Kazadi, walk up to the vehicle and have a short conversation with Ms. Brooks. (ECF No. 26 at 2; ECF No. 36 at 2.) They observed Kazadi leave the vehicle and walk east on 23rd Street while Ms. Brooks parked the vehicle and entered a nearby apartment. (ECF No. 26 at 2; ECF No. 36 at 2.) Ms. Brooks left the apartment minutes later, re-entered her vehicle, and started the engine. (ECF No. 26 at 2; ECF No. 36 at 2.) Approximately 10 minutes later, Kazadi was also seen leaving the same apartment; he entered Ms. Brooks's vehicle, and she drove off. (ECF No. 26 at 2; ECF No. 36 at 2.)

Thereafter, the officers observed Ms. Brooks commit various traffic violations,

including failure use a turn signal and a lane violation.[1]  (ECF No. 26 at 2; ECF No. 36 at 2.)  The Officers activated their emergency lights from the dashboard of their vehicle and conducted a traffic stop of Ms. Brooks's vehicle.  (ECF No. 26 at 2; ECF No. 36 at 2.)  Officer Zimmerman approached the passenger's side of the vehicle to speak with Kazadi while Officer Spano approached the driver's side to speak with Ms. Brooks.  (ECF No. 26 at 2; ECF No. 36 at 2–3.)

Officer Zimmerman twice asked Kazadi for his identification and/or his name, but Kazadi refused to provide this information.  (Video at 0:41, 0:51; ECF No. 26 at 3.)  Officer Zimmerman then asked Kazadi to step out of the car, which Kazadi also initially refused to do.  (Video at 0:59.)[2]  Thereafter, Kazadi offered to give his name to Officer Zimmerman, but Officer Zimmerman again asked him to step out of the vehicle.  (Video at 1:10; ECF No. 26 at 3.)

When Kazadi exited the vehicle, Officer Zimmerman stepped towards Kazadi.  He ordered Kazadi to put his fingers together on the top of his head and began to attempt a pat-down search of Kazadi.  (Video at 1:46; ECF No. 26 at 4.)  However, Kazadi spun away from Office Zimmerman and resisted the pat-down.  (Video at 1:48; ECF No. 26 at 4.)  After an ensuing scuffle lasting several seconds, Kazadi was tased and placed into handcuffs.  (*Id.* at 1:48–2:20; ECF No. 26 at 4.)

---

[1] Although Kazadi concedes in his opening brief that the officers "had a reasonable suspicion to initiate an investigative traffic stop on the basis of the observed traffic violation" (ECF No. 26 at 4), he states in his Reply that he can "neither admit nor deny a traffic violation occurred" (ECF No. 52 at 3).

[2] In his Reply, Kazadi "denies he ever refused to provide Agent Zimmerman with his ID" and that "he ever refused to get out of the car."  The Court finds that these assertions are not supported by the Video.

Thereafter, Officer Zimmerman searched Kazadi's pockets and uncovered a loaded firearm, a large black bag containing ten smaller bags— four bags containing cocaine, three bags containing crack cocaine, and one bag containing methamphetamine—and approximately $1,113 cash. (ECF No. 36 at 4–5; ECF No. 26 at 4.)[3]

## II. Burden of Proof

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." However, "[t]he Amendment says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a prudential doctrine created by th[e Supreme] Court to compel respect for the constitutional guaranty." *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011) (internal citations and quotation marks omitted). Pursuant to the exclusionary rule, a defendant may move for suppression of evidence obtained in violation of the Fourth Amendment. *Id.*

It is undisputed that the Officers did not have a warrant when they initially stopped Kazadi or when they conducted the search of his person. On a motion to suppress evidence derived from a warrantless search and/or seizure, the defendant bears the burden of presenting a *prima facie* case that the Fourth Amendment has been "implicated," at which point the burden shifts to the Government to prove "that its

---

[3] The Government states—and Kazadi does not contest—that the black bag in Kazadi's pocket contained ten smaller bags, but it does not identify the contents of two of the ten smaller bags.

warrantless actions were justified (*i.e.*, as a lawful investigatory stop, or under some other exception to the warrant requirement)." *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994); *see also id*. at nn.1–2 (citing authorities).

Kazadi's motion reveals that his personal Fourth Amendment rights are implicated here. He has therefore raised a *prima facie* case of a potential Fourth Amendment violation through a warrantless seizure and subsequent search, thus shifting the burden to the Government to justify the police officers' actions.

### III. Analysis

Stop and frisk cases are governed by *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. Under *Terry*, "a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 185 (2004). Reasonable suspicion is an objective standard, and "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Although reasonable suspicion requires "something more than an inchoate and unparticularized suspicion or hunch, the level of suspicion required . . . is considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. McHugh*, 639 F.3d 1250, 1255–56 (10th Cir. 2011) (internal quotation marks and brackets omitted). In evaluating whether reasonable suspicion exists, deference is granted to an officer's ability to make inferences and deductions given his or her training, experience, the "totality of the

circumstances," and public interest considerations such as law enforcement officer safety are taken into account. *United States v. Rice*, 483 F.3d 1079, 1083 (10th Cir. 2007).

Where an officer conducting a *Terry* stop has a reasonable suspicion that the suspect may be armed and dangerous, a limited search for concealed weapons—a pat-down search or frisk—may be conducted. *Adams v. Williams*, 407 U.S. 143, 146 (1972). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . . So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Id.* Thus, an officer conducting a pat-down search during a *Terry* stop must have reasonable suspicion of criminal activity to justify the initial stop, as well as separate reasonable suspicion that the suspect is armed to justify the pat-down. *See Rice*, 483 F.3d at 1082–83.

Kazadi argues for suppression on the grounds that the Officers lacked reasonable articulable suspicion to stop and frisk him. In determining whether Kazadi's Fourth Amendment rights were violated, the Court will consider the reasonableness of the November 1, 2019 traffic stop at each stage of the officers' encounter with Kazadi.

**A.     The Initial Stop of Kazadi's Vehicle**

"The decision to stop an automobile is reasonable, and so consistent with the Fourth Amendment, where the police have probable cause to believe that a traffic violation has occurred." *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (internal quotation marks omitted and alterations incorporated); *see also United States*

*v. McGehee*, 672 F.3d 860, 867 (10th Cir. 2012) (illegal parking justified initial traffic stop). An officer's subjective motives for stopping a vehicle are irrelevant as long as that the officer has a reasonable suspicion that "this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (internal quotation marks omitted).

The Court finds that the traffic stop was justified at its inception. In his Motion, Kazadi initially "concedes Officers Zimmerman and Spano had reasonable suspicion to initiate an investigative traffic stop on the basis of the observed traffic violation." (ECF No. 26 at 4.) In his Reply, however, Kazadi suggests—for the first time—that he "can neither admit nor deny a traffic violation occurred" and that "there appears to be some ambiguity about the legitimacy of the stop." (ECF No. 52 at 3.) By arguing this point for the first time in his Reply, Kazadi has waived this contention. *See, e.g.*, *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

However, even if the Court considers Kazadi's revised position from his Reply, Kazadi's vague assertions about "ambiguity" are insufficient to challenge the basis for the traffic stop. As a passenger in the vehicle, Kazadi should be able to say whether the traffic stop was invalid; however, he does not unequivocally do so. Because the Court has been presented with no evidence to the contrary, it finds that the initial traffic stop was valid.

### B.  Officer Zimmerman's Initial Attempt to Frisk Kazadi

Kazadi argues that Officer Zimmerman conducted a *Terry* frisk on him "the moment he exited the car" and that "Officer Zimmerman lacked reasonable suspicion to conduct a pat-down for weapons."  (ECF No. 26 at 4.)  The Government, on the other hand, agues that the sole *Terry* frisk was conducted *after* Kazadi resisted Officer Zimmerman and was placed into handcuffs.  (ECF No. 36 at 1.)

After watching the Video of the encounter, the Court finds that there was no *Terry* frisk the moment that Kazadi exited the vehicle, as Defendant contends.  When Kazadi steps out of the vehicle, Officer Zimmerman appears to attempt to begin a pat-down of Kazadi.  (*See* Video at 1:42.)  Had Officer Zimmerman completed his *Terry* frisk at this point and discovered the weapon, drugs, and other items on Kazadi's person, the Court may well have decided that Officer Zimmerman lacked reasonable suspicion to justify the search.  However, the Court need not undertake this analysis because the Video of the encounter and Kazadi's own admissions provide ample evidence that Kazadi actively resisted and impeded the initial frisk attempt.  (*See id.* at 1:47; *see also* ECF No. 26 at 4 ("Officer Zimmerman orders Mr. Kazadi to place his hands on the head and begins a pat-down search of his body. . . . Mr. Kazadi resists and is eventually tased by Officer Spano and arrested.").)

Critically, the officers had not found the weapon, drugs, or any other items on Kazadi's person when he resisted and terminated the initial attempted frisk.  In other words, there was not, at this point, a viable Fourth Amendment violation with respect to the discovery of these items.  The Supreme Court has held that a person who escapes an officer's grasp in no longer "seized" under the Fourth Amendment, but is instead in a

8

"period of fugitivity," and anything officers learn during the "period of fugitivity" can justify their subsequent seizure. *See California v. Hodari D.*, 499 U.S. 621, 624–25 (1991); *see also Henson v. United States*, 55 A.3d 859, 866–67 (D.C. Cir. 2012) (finding defendant was not "seized" under the Fourth Amendment when, after consenting to a pat-down search for weapons, he began moving away from the officer and took off running); *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) (holding that "a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest").

**C.     The Search After Kazadi Resisted Officer Zimmerman**

While the Court could resolve this Motion by analyzing whether Officer Zimmerman had reasonable suspicion to conduct a *Terry* frisk after Kazadi resisted Officer Zimmerman, the Court finds this Motion is more easily resolved when it views the search as a search incident to arrest.

By resisting Officer Zimmerman—as Kazadi concedes he did (*see* ECF No. 26 at 4; ECF No. 52 at 5)—Kazadi gave Officer Zimmerman probable cause to believe that he had committed a separate crime. *See, e.g.*, Colo. Rev. Stat. § 18-8-104(1)(a), (2) ("A person commits obstructing a peace officer . . . when, by using . . . physical interference, . . . such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority[.] * * * It is not a defense to a prosecution under this section that the peace officer was acting in an illegal manner, if he or she was acting under color of his or her official authority."); *id.* at § 42-4-107 ("No person shall willfully

fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic.").

Even if there is some question whether Kazadi actually violated any of the foregoing statutes, the officers certainly had probable cause to suspect their violation. And once that probable cause existed, the current state of Fourth Amendment case law gave the officers expansive authority to search Kazadi "incident to arrest." "A warrantless search preceding an arrest is a legitimate 'search incident to arrest' as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search"—and this is so "[w]hether or not the officer intended to actually arrest the defendant at the time of the search." *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998). "[T]he legitimate basis [inquiry] is purely an objective standard and can be [satisfied by] *any crime*, not merely that for which the defendant is ultimately charged." *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006) (emphasis in original). In short, if objective probable cause exists to arrest for any offense, an officer may search the individual and then arrest him or her, even if the arrest is for an offense discovered through the search and not for the offense that retroactively justifies the search.

Under this authority, for purposes of the resolution of his Motion, Kazadi was his own worst enemy. By resisting Officer Zimmerman's initial attempt to frisk him, he gave the officers probable cause to arrest him for one or more crimes.[4] With this probable

---

[4] Kazadi argues in passing that "the encounter escalated to an illegal arrest without probable cause when the officers used excessive force during the ensuing scuffle." (ECF No. 26 at 4.) In addition to noting that this allegation is inconsistent with Kazadi's admission that he resisted Officer Zimmerman (*see* ECF No. 26 at 4; ECF No. 52 at 5), the Court finds that

cause, the officers were justified in conducting a full search incident to the arrest that was about to happen. Officer Zimmerman's intentional search of Kazadi was therefore permissible and the evidence obtained from the traffic stop will not be suppressed.[5]

## IV.  CONCLUSION

For the reasons set forth above, Kazadi's Motion to Suppress (ECF No. 26) is DENIED.

Dated this 22nd day of June, 2020.

BY THE COURT:

William J. Martinez
United States District Judge

---

Kazadi waived this argument by failing to meaningfully develop it. *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) ("Cursory argument not meaningfully developed by any analysis or citation is deemed waived.").

[5]  Kazadi has also failed to meaningfully develop his request to suppress "statements allegedly made while he was detained during the traffic stop." (ECF No. 26 at 1.) He neither identifies the statements that he seeks to suppress, nor any authority upon which suppression of statements would be warranted. *See Phillips v. Calhoun*, 956 F.2d 949, 956–54 (10th Cir. 1992) (recognizing that "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point." (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990))).